UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ODTMAN ALFONSO CARDENAS CASTELLANOS et al.,<br>　　　　　　Petitioners,<br><br>　v.<br>POLLY KAISER, Acting Field Office Director of the San Francisco Immigration and Customs Enforcement Office; TODD LYONS, Acting Director of United States Immigration and Customs Enforcement; KRISTI NOEM, Secretary of the United States Department of Homeland Security, PAMELA BONDI, Attorney General of the United States, acting in their official capacities,<br>　　　　　　Respondents | Case No. 25-cv-07962<br><br>**ORDER GRANTING TEMPORARY RESTRAINING ORDER**<br><br>Re: Dkt. No. 2 |

Pending before the Court is Petitioners Odtman Alfonso Cardenas Castellanos, Ermides Garzon Meneses, Alizda Nallive Lara Del Rio, Herlinda Patino Gonzalez, and Yolima Trujillo Mejia (hereinafter "Petitioners") *Ex Parte* Motion for Temporary Restraining Order. ECF 2. Petitioners request that the Court order Respondents to release them immediately from custody without requiring bond or electronic monitoring, or, in the alternative, order Petitioners' immediate release from custody and, within 14 days, order a pre-deprivation bond hearing before the San Francisco Immigration Court, where Respondents shall bear the burden to prove by clear and convincing evidence that Petitioners are a danger or a flight risk. ECF 2 at 1. For the reasons stated below, the Court GRANTS Petitioners' *Ex Parte Motion* for Temporary Restraining Order.

**I.　　BACKGROUND**

　　According to the information available to the Court, Petitioners are noncitizens from

1  Columbia and Mexico who entered the United States in 2023 or 2024.  ECF 1 ¶¶ 51–61.

2  Petitioners were all apprehended by immigration officials at the border.  *Id.*  Petitioners were all

3  determined not to be a flight risk or danger to the community and were released by immigration

4  officials shortly after being apprehended.  *Id.*  Petitioners were released pursuant to 8 U.S.C. §

5  1226(a) and given immigration court dates.  *Id.* ¶¶ 51, 53, 55, 57 59.  Petitioners have never been

6  determined to be a flight risk or danger to the community.  *Id.* ¶ 61.  Petitioners have complied

7  with all of their ICE and immigration court obligations.  ECF 3 at 8. Petitioners have no criminal

8  history and have not been taken back into custody since today, when they were arrested after

9  arriving to immigration court for scheduled hearings.  *Id.* at 8–9.

10  Petitioner Herlinda Patino Gonzalez ("Petitioner Gonzalez") is 53 years old.  ECF 3-1 ¶7.

11  Petitioner Gonzalez fled Columbia when her family was targeted by political violence and arrived

12  in the United States in April 2024.  *Id.*  She filed a Form I-589 Application for Asylum within a

13  year of arriving in the United States.  *Id.*

14  Petitioner Ermides Garzon Meneces ("Petitioner Meneces") is 51 years old.  *Id.* ¶8.

15  Petitioner Meneces came to the United States seeking asylum in June 2024, after being threatened

16  by three armed men on his land in Columbia.  *Id.*  Petitioner Meneces was targeted for violence

17  after pursuing reparations for his family after his father was murdered during the armed conflict in

18  1984 in Columbia.  *Id.*  Petitioner Meneces filed a Form I-589 Application for Asylum in

19  January2025, and amended his application on September 18, 2025.  *Id.*  Petitioner Meneces has

20  reported for all three ICE check-ins since his arrival.  *Id.*

21  Petitioner Alizda Nalliuve Lara Del Rio ("Petitioner Del Rio") is 33 years old.  *Id.* ¶ 9.

22  Petitioner Del Rio came to the United States seeking asylum in December 2023, after being

23  subject to threats and violence in Mexico due to her sexuality.  *Id.*

24  Petitioner Yolima Trujillo Mejia ("Petitioner Mejia") is 44 years old.  *Id.* ¶ 10.  She came

25  to the United States seeking asylum in December 2023, after being extorted and threatened by

26  armed forces in Columbia.  *Id.*

27  Petitioner Odtman Alfonso Cardenas Castellanos ("Petitioner Castellanos") is 32 years old.

28  *Id.* ¶ 11.  He came to the United States seeking asylum in March 2024 after being threatened by

1  armed forces in Columbia.  *Id.*  He left Columbia after there were grenades thrown into the
2  building where he worked and the cameras were shot out.  *Id.*
3        On September 18, 2025, Petitioners all appeared in-person at San Francisco Immigration
4  Court for master calendar hearings.  *Id.* ¶¶ 52, 54, 56, 58, 60.  In each of their hearings, the
5  government made an oral motion to dismiss the case.  *Id.*  In each case, the Immigration Judge re-
6  set the master calendar hearings on October 9, 2025, so that Petitioners could respond to the
7  government's motion.  *Id.*  Petitioners were arrested by DHS before they left the courthouse.  *Id.* ¶
8  1.  Petitioners fear that Respondents will detain them indefinitely.  ECF 3 at 19.
9        Petitioners-Plaintiffs fear that ICE will detain them and keep them indefinitely or remove
10 them before these proceedings have concluded.  ECF 3 at 10.

11 **II.  LEGAL STANDARD**

12       The standard for issuing a temporary restraining order is identical to the standard for
13 issuing a preliminary injunction. *See Washington v. Trump*, 847 F.3d 1151, 1159 n.3 (9th Cir.
14 2017) ("[T]he legal standards applicable to TROs and preliminary injunctions are substantially
15 identical."  (internal quotation marks and citation omitted)). An injunction is a matter of equitable
16 discretion and is "an extraordinary remedy that may only be awarded upon a clear showing that
17 the plaintiff is entitled to such relief."  *Winter v. Natural Resources Defense Council, Inc.*, 555
18 U.S. 7, 22 (2008).  And "a TRO 'should be restricted to . . . preserving the status quo and
19 preventing irreparable harm just so long as is necessary to hold a [preliminary injunction] hearing
20 and no longer.'"  *E. Bay Sanctuary Covenant v. Trump*, 932 F.3d 742, 779 (9th Cir. 2018)
21 (quoting *Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Auto Truck Drivers Local No.*
22 *70*, 415 U.S. 423, 439 (1974)).
23       A plaintiff seeking preliminary injunctive relief must establish "[1] that he is likely to
24 succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary
25 relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public
26 interest."  *Winter*, 555 U.S. at 20.  "[I]f a plaintiff can only show that there are serious questions
27 going to the merits—a lesser showing than likelihood of success on the merits—then a preliminary
28 injunction may still issue if the balance of hardships tips sharply in the plaintiff's favor, and the

3

other two *Winter* factors are satisfied." *Friends of the Wild Swan v. Weber*, 767 F.3d 936, 942 (9th Cir. 2014) (internal quotation marks and citations omitted). "[W]hen the Government is the opposing party," the final two factors "merge." *Nken v. Holder*, 556 U.S. 418, 435 (2009).

### III. DISCUSSION

As a preliminary matter, the Court finds that the requirements for issuing a temporary restraining order without notice pursuant to Federal Rule of Civil Procedure 65(b) are met. Petitioners' attorney has set out specific facts showing that immediate and irreparable injury, loss, or damage may result before the adverse party can be heard in opposition and has stated that counsel attempted to contact the Civil Division Chief at the U.S. Attorney's Office for the Northern District of California on September 18, 2025. ECF 3-1, 3-2.

Having found that the requirements of Federal Rule of Civil Procedure 65(b) are met, the Court also finds that Petitioners (A) have demonstrated that they will likely succeed on the merits of their claim; (B) are likely to suffer irreparable harm in the absence of preliminary relief; and (C) the balance of equities and the public's interest weigh in favor of granting relief.

#### A. Petitioners Will Likely Succeed on the Merits of Their Claim

Petitioners will likely succeed on the merits of their claim. The protections of the Constitution apply to all persons within the jurisdiction of the United States, including citizens and non-citizens alike, and including those persons who are present in the United States without authorization. *See Plyler v. Doe*, 457 U.S. 202, 210 (1982) (noting that "[a]liens, even aliens whose presence in this country is unlawful, have long been recognized as 'persons' guaranteed due process of law by the Fifth and Fourteenth Amendments"). Under the Due Process Clause of the Fifth Amendment to the United States Constitution, no person shall be "deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V.

Here, Petitioners have a protected liberty interest in remaining out of custody, which would allow them to continue to serve their community and provide for their families. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint— lies at the heart of the liberty that [the Due Process Clause of the Fifth Amendment to the United States Constitution] protects." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). Moreover, "the Supreme

4

1  Court has held that 'habeas corpus relief is not limited to immediate release from illegal custody,

2  but . . . is available as well to attack future confinement and obtain future releases.'" *Giovanny*

3  *Hernan Ortega v. Kaiser*, No. 25-cv-5259, 2025 WL 2243616, at *3 (Aug. 6, 2025) (quoting

4  *Preiser v. Rodriguez*, 411 U.S. 475, 487 (1973)). Petitioners have never been determined to be a

5  flight risk or danger to their community. ECF 1 ¶¶ 51, 53, 55, 57, 79. Petitioners have no

6  criminal record and have complied with all of their ICE and immigration court obligations. *Id.* ¶¶

7  51, 53, 55, 57, 59. In fact, Petitioners were all released shortly after being apprehended because

8  Respondents determined that their detention was not justified. ECF 1 ¶¶ 51, 53, 55, 57, 79.

9  Petitioners were all released pursuant to 8 U.S.C. § 1226(a), which governs discretionary

10  detention for noncitizens with pending removal proceedings. Although 8 U.S.C. § 1226(a) has

11  long been the "default rule" for the detention of noncitizens like Petitioners, Respondents are now

12  detaining noncitizens under § 1225(b)'s mandatory detention provisions instead. *See Paula*

13  *Andrea Salcedo Aceros v. Polly Kaiser et al.*, No. 25-cv-5624, 2025 WL 2637503 (N.D. Cal. Sept.

14  12, 2025). If Respondents argue that 8 U.S.C. § 1225, not § 1226(a), applies to Petitioners,

15  Petitioners would be ineligible for bond hearings and would have no pathway to challenge their

16  unlawful detention. *Id.* (finding likelihood of success on the merits of due process claim where

17  Respondents seek to "avoid the strictures of 1226(a) with its bond hearing protections by asserting

18  [petitioner] has no protected liberty interest (or any statutory rights under § 1226").

19  Moreover, several courts have already rejected Respondents' attempt to broaden the

20  government's authority to detain noncitizens already living in the United States under both §

21  1225(b) and § 1226(a). *See Paula Andrea Salcedo Aceros v. Polly Kaiser et al.*, No. 25-cv-5624-

22  EMC, 2025 WL 2637503 (N.D. Cal. Sept. 12, 2025); *Lopez Benitez v. Francis et al.*, No. 25-cv-

23  5937, 2025 WL 2371588, (S.D.N.Y Aug. 13, 2025); *Martinez v. Hyde*, No. 25-cv-11613, 2025

24  WL 2084238 (D. Mass. July 24, 2025); *Gomes v. Hyde*, No. 25-cv-11571, 2025 WL 1869299 (D.

25  Mass. July 7, 2025); *Rodriguez v. Bostock*, No. 3:25-cv-5240, 779 F. Supp. 3d 1239 (W.D. Wash.

26  2025). "Against this backdrop, the Court finds it particularly doubtful that Congress intended

27  section 1225(b)(2)(A) to apply to non-citizens, like Petitioners, detained while "present in the

28  United States." *Martinez*, 2025 WL 2084238, at *8. The Court finds that Petitioner-Plaintiff will

5

likely succeed on the merits of showing that he has a private interest in remaining out of custody.

Accordingly, the Court finds that the three factors relevant under the *Mathews v. Eldrige* test, "the private interest that will be affected by the official action," "the risk of an erroneous deprivation . . . and the probable value, if any, of additional or substitute procedural safeguards," and "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail," weigh in favor of Petitioners being immediately released from custody, and that they be given notice and a pre-detention hearing before a neutral decisionmaker prior to being taken back into custody. Petitioners have complied with all of their ICE and immigration court obligations and are diligently pursuing their rights in immigration court.  ECF 1 ¶¶ 51, 53, 55, 57, 59.

### B. Petitioners Will Likely Suffer Irreparable Harm in the Absence of Temporary Relief

Petitioners likely face irreparable injury and harm to liberty absent relief.  "It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Hernandez v. Sessions*, 872 F.3d 976, 994 (9th Cir. 2017) (quoting *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012)).  As discussed above, Petitioners have a constitutional liberty interest in their conditional release.  "When an alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary." *Warsoldier v. Woodford*, 418 F.3d 989, 1001-02 (9th Cir. 2005) (cleaned up).

### C. The Balance of Equities and the Public Interest Weigh in Favor of Granting a Stay

The final two *Winter* factors, the balance of the equities and public interest, merge and weigh heavily in favor of granting temporary relief.  "[T]he public has a strong interest in upholding procedural protections against unlawful detention, and the Ninth Circuit has recognized that the costs to the public of immigration detention are staggering." *Jorge M. F. v. Wilkinson*, No. 21-CV-01434, 2021 WL 783561, at *3 (N.D. Cal. Mar. 1, 2021) (cleaned up) (internal quotations omitted).  Petitioners face significant harm absent relief, while the harm to Respondents is minimal.  *See Domingo*, 2025 WL 1940179, at *4 ("[T]he comparative harm potentially

imposed on Respondents-Defendants is minimal—a mere short delay in detaining Petitioner-Plaintiff, should the government ultimately show that detention is intended and warranted."). Respondents, at most, face a short delay in detaining Petitioners and are not "harmed in any legally cognizable sense by being enjoined from constitutional violations." *Zepeda v. U.S. Immigr. & Nat. Serv.*, 753 F.2d 719, 727 (9th Cir. 1983).

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Petitioners' *Ex Parte* Motion for Temporary Restraining Order to preserve the status quo pending further briefing and a hearing on this matter.

Respondents are ORDERED to immediately release Petitioners Odtman Alfonso Cardenas Castellanos, Ermides Garzon Meneses, Alizda Nallive Lara Del Rio, Herlinda Patino Gonzalez, and Yolima Trujillo Mejia from custody and are ENJOINED AND RESTRAINED from re-detaining Petitioners without notice and a pre-deprivation hearing before a neutral decisionmaker to determine if Petitioners' detention is legally justified, and from removing them from the United States. This Order shall remain in effect until October 2, 2025 at 5 p.m.

The Petition, *Ex Parte* Motion for Temporary Restraining Order, and this Order SHALL be served on Respondents such that they receive actual notice as soon as practicable, and Petitioners file proof of such service by no later than September 21, 2025 at 5 p.m.

Respondents are ORDERED TO SHOW CAUSE in-person at a hearing in the courtroom of the assigned Judge, or as otherwise ordered by that Judge, on September 23, 2025 at 1:30 p.m. why a preliminary injunction should not issue. Respondents shall file a response to Petitioners' motion no later than September 22, 2025. Any reply should be filed by September 23, 2025. Petitioners shall not be deported, removed, or otherwise transferred outside the United States until further Order of this Court.

IT IS SO ORDERED.

Dated: September 18, 2025 at 7:50 p.m.

TRINA L. THOMPSON
United States District Judge