UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ODTMAN ALFONSO CARDENAS CASTELLANOS, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>SERGIO ALBARRAN, et al.,<br><br>Defendants. | Case No. 25-cv-07962-NW<br><br>**ORDER GRANTING PRELIMINARY INJUNCTION**<br><br>Re: ECF Nos. 2, 3 |

Petitioners Odtman Alfonso Cardenas Castellanos, Ermides Garzon Meneses, Alizda Nallive Lara del Rio, Herlinda Patino Gonzalez, and Yolima Trujillo Mejia (collectively, "Petitioners") are unrelated immigrants who appeared in-person at San Francisco Immigration Court for master calendar hearings on September 18, 2025. During each of their hearings, the Government made an oral motion to dismiss their cases, and the immigration judge re-set the hearings to October 9, 2025, so that each Petitioner could respond to the Government's motion. However, before Petitioners left the courthouse, Immigration and Customs Enforcement ("ICE") officers arrested them.

Almost immediately following their arrest on September 18, 2025, Petitioners filed a petition for writ of habeas corpus and complaint against Respondents Sergio Albarran, Acting Field Office Director of the San Francisco ICE Office; Todd Lyons, Acting Director of United States Immigration and Customs Enforcement; Kristi Noem, Secretary of the United States Department of Homeland Security ("DHS"), and Pamela Bondi, Attorney General of the United States, in their official capacities (collectively, "the Government"), requesting their immediate release from detention. Compl., ECF No. 1. Petitioners additionally moved for a temporary restraining order ("TRO"). TRO, ECF Nos. 2-3.

1   Later the same day, the Court (Thompson, J.) issued a TRO requiring the immediate release of Petitioners and enjoining and restraining the Government from "re-detaining Petitioners without notice and a pre-deprivation hearing before a neutral decisionmaker to determine if Petitioners' detention is legally justified, and from removing them from the United States." ECF No. 5. The Court ordered the TRO to remain in effect through October 2, 2025, at 5:00 p.m., and issued an order to show cause why a preliminary injunction should not issue. *Id*.

On September 22, 2025, the Government responded to the order to show cause. Opposition to Order to Show Cause, ECF No. 10 ("Opp'n").[1] Petitioners filed a reply the next day. Reply to Order to Show Cause, ECF No. 11 ("Reply").

On September 29, 2025, the undersigned judge held a preliminary injunction hearing, and extended the terms of the TRO until a further order of the Court. ECF No. 14. On October 6, 2025, the Government filed a supplemental brief as ordered in the hearing. ECF No. 16. Having considered the parties' briefs, the relevant legal authority, and counsel's arguments at the hearing, the Court GRANTS Petitioners' motion for a preliminary injunction.

**I.     BACKGROUND**

Petitioners are originally from Colombia and Mexico and left those countries due to fear of harm or persecution. Compl. ¶¶ 51–61. They entered the United States on various dates between 2023 and 2024. *Id*.

When Petitioners arrived in the United States, they were apprehended by immigration officials at the border. *Id*. Those officials determined that Petitioners were not a flight risk or a danger to the community and released Petitioners shortly after they were apprehended. *Id*. "Petitioners were issued Form I-220A, Order of Release on Recognizance when they were released at the border, which states the detention authority as Section 236 of the Immigration and

---

[1] In a footnote in its opposition, the Government noted that Petitioners' habeas applications were brought as a single action. *See* Opp'n at 7 n. 4; *Est. of Saunders v. Comm'r*, 745 F.3d 953, 962 n.8 (9th Cir. 2014) ("Arguments raised only in footnotes, or only on reply, are generally deemed waived."). The appropriate remedy for improper joinder would be to sever each Petitioners' claims and require each Petitioner to proceed in a separate action, not to deny relief. *See Acord v. California*, No. 17-cv-01089-MJS (HC), 2017 WL 4699835, at *1 (E.D. Cal. Oct. 19, 2017). The Government did not file a motion to sever so the issue is not before the Court.

2

Nationality Act ("INA"), codified at 8 U.S.C. § 1226." Reply at 5-6.

Petitioners have since moved to various towns in this District and have applied for relief to stay in the United States, including applying for asylum and withholding of removal. Compl. ¶¶ 51–61. Petitioners have no criminal history prior to or since arriving in the United States. *Id*. They have never been determined to be a flight risk or a danger to the community. *Id.* ¶ 61. Petitioners have also complied with all their ICE and immigration court obligations. *Id*.

The following information regarding each Petitioner is drawn from the Petitioners' complaint and declarations and has not been rebutted by the Government:[2]

- Mr. Castellanos is 32 years old. He fled Colombia after he was threatened by members of the armed forces, and grenades were thrown into the building that he managed. Castellanos arrived in the United States in March 2024. He was apprehended by immigration officials at the border and then released under § 1226(a) to await an immigration court date. After his release, he moved to California. In September or November 2024, he applied for asylum, withholding of removal, and protection under the Convention Against Torture. He has complied with all ICE and immigration court obligations. Castellanos has no criminal history anywhere in the world.
- Mr. Meneses is 51 years old and is from Colombia. In 2024, he attended a victims' meeting to pursue reparations on behalf of his family for his father's murder during the armed conflict in 1984. Following that meeting, Meneses fled Colombia because armed men came onto his land and threatened his life. He arrived in the United States in June 2024 and was apprehended by immigration officials at the border. Meneses was released by immigration officials under § 1226(a) to await his immigration court date. In June 2024, he moved to California and applied for asylum, withholding of removal, and protection under the Convention Against

---

[2] Compl. ¶¶ 51-61; Declaration of Jennifer T. Friedman, ¶¶ 7-11, ECF No. 3-1 ("Friedman Decl.").

3

1   Torture. He has complied with all ICE and immigration court obligations.
2   Meneses has no criminal history anywhere in the world.

3  - Ms. del Rio is 33 years old. She fled Mexico after she was threatened and
4    physically mistreated due to her sexuality, and her friend was murdered for being
5    gay. Del Rio arrived in the United States in either December 2023 or April 2024,
6    and she was apprehended by immigration officials at the border.[3] She was released
7    by immigration officials under § 1226(a) to await her immigration court date. She
8    then moved to California. In late 2024 or early 2025, she applied for asylum,
9    withholding of removal, and protection under the Convention Against Torture. She
10   has complied with all ICE and immigration court obligations. Del Rio has no
11   criminal history anywhere in the world.

12 - Ms. Gonzalez is 53 years old and is from Colombia. She fled after her brother was
13   threatened for political involvement and her nephew was killed. She arrived in the
14   United States in April 2024, and she was apprehended by immigration officials at
15   the border. Gonzalez was released by immigration officials under § 1226(a) to
16   await her immigration court date. She then moved to California. In December
17   2024, she applied for asylum, withholding of removal, and protection under the
18   Convention Against Torture. She has complied with all ICE and immigration court
19   obligations. Gonzalez has no criminal history anywhere in the world.

20 - Ms. Mejia is 44 years old. She fled Colombia after she was extorted and threatened
21   by members of the armed forces. She arrived in the United States in December
22   2023, and she was apprehended by immigration officials at the border. Mejia was
23   released by immigration officials under § 1226(a) to await her immigration court
24   date. She then moved to California. In July 2024, she applied for asylum,
25   withholding of removal, and protection under the Convention Against Torture. She

---

[3] There is a discrepancy between the complaint and the Friedman Declaration as to when Ms. del Rio arrived in the United Sates. *See* Compl. ¶ 55 ("arrived in the United States in April 2024"); Friedman Decl. ¶ 9 ("she came to the United States seeking asylum in about December 2023").

4

has complied with all ICE and immigration court obligations. Mejia has no criminal history anywhere in the world.

From the time each of the Petitioners were briefly detained upon arrival in the United States, until September 18, 2025, ICE never took any of the Petitioners back into custody. On that date, in compliance with their notices to appear, "Petitioners went to immigration court for what should have been routine preliminary immigration hearings before an immigration judge." Compl. ¶ 1. The routine hearings are part of Petitioners' process for pursuing claims for relief from removal, including withholding of removal or asylum. *See* 8 U.S.C. § 1229(a). During those hearings, the Government orally moved to dismiss their respective cases. Compl. ¶ 1. Petitioners allege that the Government "did so for the purpose of placing them in so-called 'expedited removal' proceedings," under 8 U.S.C. § 1225(b). *Id*. In each case the immigration judge reset the hearing date to October 9, 2025, to allow each Petitioners time to respond to the Government's motion to dismiss.[4] Compl. ¶¶ 51-61.

"Minutes after Petitioners exited the courtroom, DHS agents arrested them before they could leave the courthouse." *Id*. "Respondents re-detained Petitioners with no notice, no explanation of the justification of their re-detention, and no opportunity to contest their re-detention before a neutral adjudicator before being taken into custody." Compl. ¶ 78. Petitioners were held in civil immigration detention at 630 Sansome Street in San Francisco. *Id*. ¶ 9. Later the same day, Petitioners filed their requests for relief and the Court issued a TRO requiring Petitioners' release from detention. ECF No. 5. At the preliminary injunction hearing, counsel confirmed that the Petitioners were released shortly after the Court issued the TRO.

## II. LEGAL STANDARD

A preliminary injunction is a matter of equitable discretion and "an extraordinary remedy never awarded as of right." *Winter v. Nat. Resources Def. Council, Inc.*, 555 U.S. 7, 25 (2008). A plaintiff seeking preliminary injunctive relief must establish "[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that

---

[4] The Court has not been updated on whether the October 9, 2025 hearings went forward as scheduled, and if so, what occurred.

the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Id*. at 20. Courts may still issue a preliminary injunction if a "plaintiff can only show that there are serious questions going to the merits – a lesser showing than likelihood of success on the merits," if the balance of equities "tips sharply in the plaintiff's favor" and if the plaintiff establishes that they are likely to suffer irreparable harm and that an injunction is in the public interest. *Friends of the Wild Swan v. Weber*, 767 F.3d 936, 942 (9th Cir. 2014) (internal quotation marks and citations omitted). Where, as here, the Government is a party, the last two *Winter* factors merge. *See Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014) (questions of whether the balance of equities tips in plaintiffs favor and whether injunction is in the public interest merge when the government is a party).

**III. DISCUSSION**

    **A. Immigration Statutory Scheme**

United States immigration policy is largely governed by the Immigration and Nationality Act ("INA") and a series of related regulations in the Code of Federal Regulations ("CFR"). Congressional Research Service, *Primer on U.S. Immigration Policy*, 1 (March 31, 2025). The INA authorizes two DHS agencies to carry out enforcement of the immigration laws. *Id*. at 13. Customs and Border Patrol is responsible for ports of entry and the border, while ICE is responsible for the United States interior and immigration detention. *Id*. at 13, 15.

In broad strokes, the INA sets out: how noncitizens can apply to remain in the United States for temporary or permanent residency, whether noncitizens may be detained pending a determination of their removability, and which defenses against removal are available, such as asylum and withholding of removal. *Id*. at 1, 18. The INA's scheme for answering these questions is complex. These questions turn on multiple factors, including, whether a noncitizen was apprehended at the border or in the interior; whether a noncitizen seeks initial admission to the United States or if they were previously lawfully admitted (or previously denied admission); how long they have been in the United States before being apprehended; and whether they have committed certain crimes or are considered a security risk. *Id*. at 16.

Here, the Court focuses on a particular distinction in the INA that is directly at issue in this

case – namely, how the law applies to *noncitizens arriving at the border*, versus how the law applies to *noncitizens who are already within the interior of the United States* when they are first identified by immigration agents. The INA has different procedures for determining removability and detention for each category. "This distinction, known as the 'entry fiction' doctrine, allows courts to treat an alien[5] arriving at the border or port of entry as though he had never entered the country, even if he is, technically, physically within U.S. territory, such as at a border checkpoint, an airport, or an immigration detention facility." Congressional Research Service, *Immigration Detention: A Legal Overview*, 3 n. 19 (September 16, 2019). This distinction is crucial for determining whether certain constitutional protections are available for a noncitizen. *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) ("The distinction between an alien who has effected an entry into the United States and one who has never entered runs throughout immigration law. It is well established that certain constitutional protections available to persons inside the United States are unavailable to aliens outside of our geographic borders."); *compare id*. ("But once an alien enters the country, the legal circumstance changes, for the Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent.") (citations omitted).

The Court begins by outlining the applicable statutes and regulations for noncitizens arriving at the border and then turns to noncitizens already present in the interior.[6]

---

[5] "Alien" is a term used in the INA, which was enacted in 1952; many cases that address immigration issues and the INA also use that word. The term is now widely considered derogatory because it pejoratively denies and dismisses the humanity of people, including children. As a result, currently advocates and government agencies often choose to use words such as immigrant or non-citizen instead. Here, the Court uses "alien" only when quoting the statute or caselaw. *See Arce v. United States*, 899 F.3d 796, 799 (9th Cir. 2018) ("Following the lead of the United States Supreme Court, we use the term 'noncitizen' throughout this opinion to refer to any person who is not a citizen or national of the United States." (cleaned up)).

[6] Numerous courts in this District have addressed the statutory regimes and legislative history of § 1226(a) and § 1225(b), and the recent shift in the Government's policy to invoke § 1225(b). *See Salcedo Aceros v. Kaiser*, No. 25-cv-06924-EMC, 2025 WL 2637503, at *1-4 (N.D. Cal. Sept. 12, 2025) (discussing the statutory scheme and DHS policy in depth); *Roa v. Albarran*, No. 25-cv-07802-RS, 2025 WL 2732923, at *2-4 (N.D. Cal. Sept. 25, 2025) (discussing the statutory scheme and particularly focusing on the recent shift in the Government's policy); *Oliveros v. Kaiser*, No. 25-cv-07117-BLF, 2025 WL 2677125, at *3 (N.D. Cal. Sept. 18, 2025) (addressing in greater depth arguments raised by the Government in support of their opposition to a preliminary injunction); *Valencia Zapata v. Kaiser*, No. 25-CV-07492-RFL, 2025 WL 2741654, at *1 (N.D. Cal. Sept. 26, 2025) (discussing the statutory scheme with a particular focus on detention).

### 1. "Arriving" Noncitizens (§ 1225)

The INA "authorizes the Government to detain certain aliens seeking admission into the country under §§ 1225(b)(1) and (b)(2)." *Jennings v. Rodriguez*, 583 U.S. 281, 303 (2018); 8 U.S.C. §§ 1225(b)(1)-(2). "Aliens seeking admission" (or "applicants for admission") are noncitizens who have "not been admitted or who arrive[] in the United States." § 1225(a); 8 C.F.R. § 1.2.[7] For applicable noncitizens, § 1225(b)(1) requires mandatory detention and expedited removal, while (b)(2) requires mandatory detention but renders noncitizens ineligible for expedited removal and places them in "full removal" proceedings.

#### a. Expedited Removal and Mandatory Detention (§ 1225(b)(1))

Under § 1225(b)(1), two groups of non-citizens are subject to expedited removal. The first group is "applicants for admission" who are inadmissible because of a misrepresentation or a failure to meet document requirements. § 1225(b)(1)(A)(i). The second group consists of noncitizens who meet *all* of the following criteria: (1) they are inadmissible due to lack of a valid entry document or misrepresentation; (2) they have not "been physically present in the United States continuously for the 2-year period immediately prior to the date of the determination of inadmissibility"; and (3) they are among those whom the Secretary of Homeland Security has designated for expedited removal. *Department of Homeland Security v. Thuraissigiam*, 591 U.S. 103, 109 (2020); § 1225(b)(1)(A)(iii).

Over the years, DHS has expanded its designations for expedited removal (sub-part (3)). "Initially, DHS's predecessor agency did not make any designation, thereby limiting expedited removal only to 'arriving aliens.'" *Make the Rd. N.Y. v. Noem*, No. 25-cv-190-JMC, 2025 WL 2494908 at *4 (D.D.C. Aug. 29, 2025). This meant that expedited removal was applicable only to applicants for admission who have "not been admitted or who arrive[] in the United States." However, in January 2025, DHS revised its designation to "apply expedited removal to

---

[7] "Arriving alien" is defined in 8 C.F.R. § 1.2 as follows: "Arriving alien means an applicant for admission coming or attempting to come into the United States at a port-of-entry, or an alien seeking transit through the United States at a port-of-entry, or an alien interdicted in international or United States waters and brought into the United States by any means, whether or not to a designated port-of-entry, and regardless of the means of transport."

8

the fullest extent authorized by statute." Designating Aliens for Expedited Removal, 90 Fed. Reg. 8139 (Jan. 24, 2025). Under this new designation, DHS made expedited removal available for noncitizens encountered anywhere within the United States, who have been in the United States for less than two years, and are inadmissible due to lack of valid documentation or misrepresentation. *Id.*[8]

If an immigration officer determines that a noncitizen is subject to § 1225(b)(1), and the noncitizen does not indicate "an intention to apply for asylum" or show "a fear of persecution," "the officer shall order the alien removed from the United States without further hearing or review." § 1225(b)(1)(A)(i). If a noncitizen "indicates either an intention to apply for asylum" or "a fear of persecution," the immigration officer "shall refer the alien for an interview by an asylum officer." §§ 1225(b)(1)(A)(i)–(ii). If the asylum officer determines that the applicant has a "credible fear," the applicant "receive[s] 'full consideration' of his asylum claim in a standard removal hearing." *Thuraissigiam*, 591 U.S. at 110. If the asylum officer determines the applicant has no "credible fear," the asylum officer "shall order the alien removed from the United States without further hearing or review." § 1225(b)(1)(B)(iii).

Importantly, § 1225(b)(1) calls for "mandatory detention" in either case: either "pending a

---

[8] The designation reads in relevant part:

> The INA grants the Secretary of Homeland Security the sole and unreviewable discretion' to modify at any time the discretionary limits on the scope of the expedited removal designation. The Secretary is exercising his statutory authority through this Notice to designate for expedited removal the following categories of aliens not currently designated: (1) Aliens who did not arrive by sea, who are encountered anywhere in the United States more than 100 air miles from a U.S. international land border, and who have been continuously present in the United States for less than two years; and (2) aliens who did not arrive by sea, who are encountered within 100 air miles from a U.S. international land border, and who have been continuously present in the United States for at least 14 days but for less than two years. Therefore, the designation in this Notice restores the scope of expedited removal to the fullest extent authorized by Congress, as was previously established in the July 23, 2019 Notice, *Designating Aliens for Expedited Removal.* To the extent there is an ambiguity in this Notice, the intended effect of this notice is to apply expedited removal to the fullest extent authorized by statute.

Designating Aliens for Expedited Removal, 90 Fed. Reg. 8139 (Jan. 24, 2025).

1 final determination of credible fear of persecution" or "if found not to have such a fear, until removed." § 1225(b)(1)(A)(i); (B)(iii)(IV).

### b. Not Expedited Removal, but Mandatory Detention (1225(b)(2))

Section 1225(b)(2) applies to applicants for admission not covered by the specific criteria of § 1225(b)(1). Section 1225(b)(2) provides that, aside from statutory exceptions, "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a ["full removal" proceedings]." § 1225(b)(2). "In other words, noncitizens subject to 1225(b)(2) are not eligible for expedited removal but are subject to mandatory detention while their full removal proceedings are pending." *Salcedo Aceros*, 2025 WL 2637503 at *3.

### 2. Noncitizens Already Present in the U.S.: Removal Proceedings and Discretionary Detention (§ 1226(a))

In contrast with § 1225(b)(1) and (b)(2), which only apply to "applicants for admission," and address both detention and expedited removal, § 1226(a) applies to immigrants who are already present in the United States. *Jennings*, 583 U.S. at 303. When apprehended within the United States under § 1226(a) (titled "Arrest, detention, and release"), a non-citizen "may be arrested and detained pending a decision on whether the alien is to be removed . . . ." § 1226(a). Alternatively, the INA permits non-citizens who are not subject to mandatory detention[9] to be released on "bond" or "conditional parole" while their removal proceeding is pending. § 1226(a)(2); *Thuraissigiam*, 591 U.S. at 108 (during removal proceedings, applicant may either be "detained" or "allowed to reside in this country"). "When a person is apprehended under § 1226(a), an ICE officer makes the initial custody determination. 8 C.F.R. § 236.1(c)(8). The alien will be released if he 'demonstrate[s] to the satisfaction of the officer that such release would

---

[9] Detention is mandatory for certain classes of "aliens" including "individuals who have committed certain enumerated offenses or who have been involved in drug trafficking or terrorist activities." *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1197 (9th Cir. 2022) (citing 8 U.S.C. § 1226(c)(1)).

10

not pose a danger to property or persons, and that the alien is likely to appear for any future proceeding.' *Id.*" *Rodriguez Diaz*, 53 F.4th at 1196.[10]

Release on conditional parole or bond under § 1226(a)(2) is subject to revocation. § 1226(b); *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 968 (N.D. Cal. 2019) ("the DHS has authority to revoke a noncitizen's bond or parole 'at any time,' even if that individual has previously been released."). After an immigrant is released pursuant to § 1226(a), "[w]here the release decision was made by a DHS officer, not an immigration judge, the government's past practice has been to require a showing of changed circumstances before [revocation and] re-arrest." *Roa*, 2025 WL 2732923 at *2 (citing *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1197 (N.D. Cal. 2017)).[11]

In summary, when an immigrant who is already present in the United States is apprehended, they may be released on conditional parole while their removal proceeding is pending.[12] Procedurally, the Government initiates a removal proceeding by serving the non-citizen with a Notice to Appear in immigration court. § 1229(a). The immigrant is provided with an opportunity for an evidentiary hearing before an immigration judge, where they can assert claims for relief from removal. *Thuraissigiam*, 591 U.S. at 108.

**B.   Policy Shift from § 1226(a) to § 1225(b)**

As discussed above, in January 2025, DHS revised its § 1225(b) designation to "apply expedited removal to the fullest extent authorized by statute." Designating Aliens for Expedited Removal, 90 Fed. Reg. 8139 (Jan. 24, 2025). This marked a significant shift in the Government's policy. "Until this year, the DHS has applied § 1226(a) and its discretionary release and review of detention to the vast majority of noncitizens allegedly in this country without valid documentation." *Salcedo Aceros*, 2025 WL 2637503 at *3.

---

[10] For noncitizens detained under § 1226(a) and not released after the initial custody determination by an immigration officer, the noncitizen may receive a bond hearing at the outset of their detention. *Jennings*, 583 U.S. at 306.

[11] If an immigration judge has determined that a noncitizen should be released, DHS may not re-arrest that noncitizen absent a change in circumstance. *See Panosyan v. Mayorkas*, 854 F. App'x 787, 788 (9th Cir. 2021).

[12] Removal proceedings are governed by 8 U.S.C. § 1229(a), and are often referred to as "full removal proceedings." *See e.g. Roa*, 2025 WL 2732923 at *4.

11

Here, the Government readily acknowledges this shift, stating:

> Until recently, the government interpreted § 1226(a) to be an available detention authority for aliens PWAP [present without being admitted or paroled] placed directly in full removal proceedings under § 1229a. In view of legal developments, the government has determined that this interpretation was incorrect. Section 1225 is the sole applicable immigration detention authority for *all* applicants for admission.

Opp'n at 6 (citations omitted). The Government argues that it can revoke its prior determinations of conditional parole for noncitizens pursuant to § 1226(a), and instead, invoke § 1225(b), expedited removal and mandatory detention. Opp'n at 12.

"This case is part of a tsunami of similar cases in this District based on the government's theory that petitioners are 'applicants for admission' to the United States who are 'subject to mandatory detention under 8 U.S.C. § 1225(b).' The theory has been uniformly rejected by the courts of the District." *Hinestroza v. Kaiser*, No. 25-CV-07559-JD, 2025 WL 2606983, at *2 (N.D. Cal. Sept. 9, 2025) (citing *Calderon v. Kaiser*, No. 5:25-cv-06695-AMO, 2025 WL 2430609 (N.D. Cal. Aug. 22, 2025); *Ramirez Clavijo v. Kaiser*, No. 25-cv-06248-BLF, 2025 WL 2419263 (N.D. Cal. Aug. 21, 2025)).

The Government argues this Court should depart from every decision in this District that has rejected this argument. In each of those cases the court issued a preliminary injunction on substantially similar facts. This Court finds the detailed analysis in those cases persuasive and similarly finds that the Government's argument here fails for two reasons.

First, Petitioners were released by immigration officials pursuant to § 1226 following determinations that they "would not pose a danger to property or persons" and that they were "likely to appear for any future proceeding." 8 C.F.R. § 1236.1(c)(8). Petitioners were each issued Form 1-220A "Order of Release on Recognizance," which lists the detention authority as Section 236 of the Immigration and Nationality Act, codified at § 1226.[13] *See Jimenez Garcia v. Kaiser*, 25-cv-06916-YGR, *2 (N.D. Cal. Aug. 29, 2025) (taking judicial notice of the fact that

---

[13] Petitioners were also charged with removability pursuant to 8 U.S.C. § 1182(a)(6)(A)(i), a statute applicable to noncitizens who are already present in the interior of the United States. This further supports Petitioners' reliance on the determination that they fall under § 1226, and not § 1225(b), which applies to "arriving aliens" "who have not been admitted or paroled[.]"

12

Form 1-220A, Order of Release on Recognizance cites release subject to 8 U.S.C. § 1226).

As many courts in this District have recently held, Petitioners "enjoy[ ] a liberty interest under § 1226(a) and the procedural protections thereunder that cannot be unilaterally abrogated without process by the Government simply 'switching tracks.'" *Salcedo Aceros*, 2025 WL 2637503 at *8; *Calderon*, 2025 WL 2430609 at *3 ("The Government's position that [petitioner] was both released under § 1226(a) yet remains 'subject to' § 1225(b) both defies logic and is unsupported by law.").

Second, even if the Government could somehow "switch tracks," as argued here, § 1225(b) does not provide a legal basis for detaining Petitioners. "Courts have routinely rejected the government's 'novel interpretation' that 1225(b) applies to noncitizens detained while present in the United States." *Roa*, 2025 WL 2732923 at *5. The only authority the Government identified to support its interpretation of § 1225(b) is a case from outside of this District; the Court does not find the reasoning in that case to be persuasive.[14] Therefore, the Court finds that Petitioners have a protected interest in their continued liberty pursuant to § 1226(a).

### C. Petitioners have Demonstrated Serious Questions Going to the Merits of their Procedural Due Process Claim

Returning to the first *Winter* factor, Petitioners have demonstrated that there are serious questions going to the merits of their claim; specifically that, under the Due Process Clause of the Fifth Amendment of the United States Constitution, they have a protected interest in their continued liberty pursuant to § 1226(a) and they are entitled to a prompt hearing before an immigration judge before they may be re-detained.[15]

---

[14] In *Jose Guadalupe Sixtos Chavez, et al. v. Kristi Noem, et al.*, the court diverged from the authority in this District. No. 3:25-cv-02325-CAB-SBC (S.D. Cal. Sep. 24, 2025). The court rejected petitioners' argument that their detention was subject to § 1226 and instead found that petitioners were subject to mandatory detention under § 1225. *Id.* The court based its decision in part on the Board of Immigration Appeals' decisions in *Matter of YAJURE HURTADO*, 29 I&N 216 (BIA 2025). Consistent with the Supreme Court's holding in *Loper Bright Enters. v. Raimondo*, the Board of Immigration Appeals' decision is entitled to limited deference. 603 U.S. 369, 400 (2024) ("agencies have no special competence in resolving statutory ambiguities," "[c]ourts do").

[15] Petitioners additionally bring claims for violation of their substantive due process rights,

The Due Process Clause prohibits the Government from depriving individuals of their liberty without due process of law. U.S. Const. amend. V. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Zadvydas*, 533 U.S. at 690. This liberty interest applies to people who are not citizens. *Hernandez v. Sessions*, 872 F.3d 976, 990 (9th Cir. 2017) (Due Process Clause "protections appl[y] 'to all "persons" within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent,' and to immigration detention as well as criminal detention.") (quoting *Zadvydas*, 533 U.S. at 693 (referring to noncitizens as "aliens")).

To determine what procedures are constitutionally sufficient to protect Petitioners' liberty interests, the Court applies the three-part test established in *Mathews v. Eldridge*, 424 U.S. 319 (1976).[16] *See Rodriguez Diaz*, 53 F.4th at 1206–07. The *Mathews* test balances three factors: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335.

Each of the three *Mathews* factors supports Petitioners' constitutional right to a hearing before an immigration judge, prior to being re-detained: Petitioners have identified a strong liberty interest in remaining out of detention; without a hearing there is a significant risk of erroneous deprivation of their liberty interest; and, the Government has a limited interest in detaining Petitioners without first providing them with a hearing.

---

violation of immigration statutes and regulations, and violation of their right to a fair hearing. The Court does not address these additional claims at this stage of the case because the Court grants Petitioners' request for preliminary injunctive relief (enjoining the Government from detaining them without notice or a hearing prior to detention), which addresses the threat of any other imminent deprivation of Petitioners' rights raised in their claims.

[16] In *Rodriguez Diaz*, the Ninth Circuit applied the *Mathews* test to a procedural due process challenge to detention under § 1226(a). While the Ninth Circuit "assume[d] without deciding that *Mathews* applies," the court explained that "*Mathews* remains a flexible test that can and must account for the heightened governmental interest in the immigration detention context." 53 F.4th at 1207.

14

First, Petitioners have a substantial private interest in remaining out of custody. If re-detained Petitioners will be separated from their communities and the personal and employment relationships they have formed in the United States. *Diaz v. Kaiser*, No. 3:25-CV-05071-BLF, 2025 WL 1676854, *3 (N.D. Cal. June 14, 2025) (holding that petitioner had a substantial private interest in remaining out of custody where it would enable to him to "work[], liv[e] at home, and be[] with family and friends to form the enduring attachments of normal life").

Pursuant to § 1226(a), Petitioners were granted release into the United States based on the determination that they were not flight risks nor a danger to the community. Petitioners relied upon the determination of their release, anticipated proceeding with their asylum and withholding of removal claims under § 1229(a), and expected that their liberty would not be revoked unless there was a material change in circumstances – meaning, a neutral decision-maker determining that they are a danger to the community or a flight risk. *See Morrissey v. Brewer*, 408 U.S. 471, 482 (1972). Aside from their brief detention on September 18, 2025, following their immigration court hearing, Petitioners have not been detained in the United States and have no criminal history anywhere in the world.

Individuals conditionally released from detention have a protected interest in their "continued liberty." *Young v. Harper*, 520 U.S. 143, 147 (1997); *Ortega*, 415 F. Supp. 3d at 969 (finding that noncitizen released from immigration detention had "a liberty interest in remaining out of custody on bond."). "[T]he liberty of a parolee, although indeterminate, includes many of the core values of unqualified liberty." *Morrissey*, 408 U.S. at 482 (holding that a person has an interest in their release regardless of whether they are subject to extensive conditions of release). While the government may have discretion to initially detain or release an individual in certain circumstances, as soon as the government has made the decision to release an individual from custody it makes "an implicit promise" that the person's liberty "will be revoked only if [the individual] fails to live up to the . . . conditions [of release]." *Id.* Termination of this liberty "inflicts a 'grievous loss' on the parolee and often on others." *Id*.

Second, there is a substantial risk that the Government will erroneously deprive Petitioners of their liberty interest if they are not granted a timely hearing before an immigration judge prior

15

to being re-detained. The Supreme Court has held that, as a general rule, "the Constitution requires some kind of a hearing *before* the State deprives a person of liberty or property." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990); *see also Romero v. Kaiser*, No. 22-cv-02508-TSH, 2022 WL 1443250, at *2 (N.D. Cal. May 6, 2022) ("[T]his Court joins other courts of this district facing facts similar to the present case and finds Petitioner raised serious questions going to the merits of his claim that due process requires a hearing before an IJ prior to re-detention."). The Government takes the position that ICE is entitled to unilaterally "re-detain" Petitioners subject to "expedited removal proceedings" without a prior hearing before an immigration judge. The Government takes this position even though it released Petitioners under § 1226(a) after concluding they were not a danger to the community nor a flight risk. The Government provided no assurances during oral argument or in their supplemental brief that ICE does not plan to immediately re-detain Petitioners. When "[a] petitioner has not received any bond or custody redetermination hearing," as here, "the risk of an erroneous deprivation of liberty is high" because neither the government nor the petitioner has had an opportunity to determine whether there is any valid basis for the detention. *Singh v. Andrews*, No. 1:25-CV-00801-KES, 2025 WL 1918679 (E.D. Cal. July 11, 2025) (simplified).

        Third, the Court finds that there is no countervailing interest from the Government that supports re-detaining Petitioners or placing them in expedited removal proceedings without a prior hearing before an immigration judge. The Government articulated no legitimate interest during oral arguments, and expressed no concern that Petitioners are a flight risk, or that they pose a threat to the community. "Civil immigration detention is permissible only to prevent flight or protect against danger to the community." *Pinchi v. Noem*, No. 5:25-CV-05632-PCP, 2025 WL 2084921, at *5 (N.D. Cal. July 24, 2025) (citing *Zadvydas*, 533 U.S. at 690). Here, the Government has offered no evidence that Petitioners' detention would serve either purpose. Further, the Government has provided no explanation as to why the time or cost of providing a pre-deprivation hearing to a person who is currently at liberty would exceed the extensive resources that would be necessary to re-detain them. *See* Government's Supplemental Brief, 1, ECF No. 16.

Each of the *Mathews* factors leans in favor of Petitioners, and they have shown a likelihood of success on the merits of their claim that the Due Process Clause entitles them to a hearing before an immigration judge prior to any re-detention.

### D. Petitioners have Demonstrated that They are Likely to Suffer Irreparable Harm without Preliminary Relief

Petitioners are likely to suffer immediate and irreparable harm in the absence of preliminary injunctive relief because they face a risk of immediate re-detention by ICE, which would be in violation of their procedural due process rights. As noted above, the Government made no assurances during oral argument that ICE does not plan to immediately re-detain Petitioners. Re-detention would likely have significant negative consequences for Petitioners, their families, and their livelihoods.

"It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Hernandez v. Sessions*, 872 F.3d 976, 994 (9th Cir. 2017) (quoting *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012)). "When an alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary." *Vasquez Perdomo v. Noem*, No. 25-4312, 2025 WL 2181709, at *23 (9th Cir. Aug. 1, 2025) (quoting *Warsoldier v. Woodford*, 418 F.3d 989, 1001–02 (9th Cir. 2005)).

### E. Balance of Equities Tips in Petitioners' Favor and An Injunction is in the Public Interest

The Court finds that the balance of equities tips sharply in Petitioners' favor, and a preliminary injunction is in the public interest. The third and fourth *Winter* factors, balance of equities and public interest, merge given that the Government is a party.

Here, the potential harm to Petitioners is significant, while the Government's potential harm is minimal. Petitioners face the most serious harm – the loss of liberty. Detention not only deprives a person of physical freedom, but it isolates a person from family, community, and employment, often causing severe, enduring psychological trauma. The Government risks only a delay in detaining Petitioners. "Faced with a choice 'between minimally costly procedures and preventable human suffering,' . . . the Court concludes 'that the balance of hardships tips

17

decidedly in petitioner's favor.'" *Singh*, 2025 WL 1918679, at *9 (quoting *Hernandez*, 872 F.3d at 996) (simplified).

In the context of immigration detention, "the government has no legitimate interest in detaining individuals who have been determined not to be a danger to the community and whose appearance at future immigration proceedings can be reasonably ensured by a lesser bond or alternative conditions." *Hernandez*, 872 F.3d at 994 ("any detention incidental to removal must bear[ ] [a] reasonable relation to [its] purpose."). At the same time, there is a strong public interest in protecting individuals from unlawful detention. *Preminger v. Principi*, 422 F.3d 815, 826 (9th Cir. 2005) (finding that all citizens have a stake in upholding the Constitution, and therefore public interest concerns are implicated when a constitutional right has been violated). The balance of equities and the public interest favors maintaining the status quo and enjoining the Government from re-detaining Petitioners without a pre-deprivation hearing.

## IV. CONCLUSION

The Court GRANTS Petitioners' request for a preliminary injunction. The Government is enjoined and restrained from (1) re-detaining any of the Petitioners without a pre-deprivation hearing before an immigration judge; and (2) removing any of the Petitioners from the United States pending these proceedings. This Order shall remain in effect until further order of the Court.

No security bond is required, as the Government provides no evidence of costs it will incur due to Petitioners' continued release. *Pinchi*, 2025 WL 2084921 at *4.

The parties shall immediately inform the Court, within three days, if there are any changes to Petitioners' immigration status or upcoming immigration proceedings.

**IT IS SO ORDERED.**

Dated: October 14, 2025

Noël Wise
United States District Judge